Good morning, judges. My name is Lynn Hamilton. I'm from Besa, Arizona, and I represent Appellant Higuera-Llamos. I realize in this matter that you've already had an opportunity to become familiar with Mr. Higuera-Llamos through the briefing of the government and myself. I believe that this presents an interesting case in that it represents a current jailhouse myth that's going around amongst the clients to the effect that there is an affirmative defense to illegal entry or reentry in immigration cases based on the theory that one is a Christian. That one is a what? A Christian. Oh, I see. Christian. This is exactly why my client proceeded to trial. He believed that since Jesus told his disciples that they could go throughout the world, that there are really no meaningful boundaries. That's why he went to trial, even though from the very get-go he confessed there was overwhelming evidence, as the government points out, as well as many documents and pieces of physical evidence to link him to the offense. In this matter, I would first like to address whether or not Judge Tilburg erred when he determined that the criminal history in this particular matter was underrepresented and, therefore, that he should deviate and go higher with a higher sentence. Now, we're all mindful of the Gall decision, which indicates that the circumstance which exists for the district court judge need not be an extraordinary circumstance in order to merit a variance from the guideline suggestions. However, there are three criteria that we normally look to to evaluate that variance, and they include the extent of the deviation, the compelling justification, and the district court's explanation. Now, my focus in this matter is on the compelling justification. In Arizona, the District of Arizona has an extraordinarily high number of immigration cases. This has been recognized by the Department of Justice, which has authorized fast-tracking of various cases through very favorable clear agreements, which are usually something that our clients accept. Additionally, not only has the Department of Justice recognized this extraordinarily high number of immigration cases, but, likewise, the Commission on Guidelines has also recognized this extraordinarily high number of immigration cases, and, therefore, whereas in former times, one would get a plus-16 enhancement for having a prior if you were an immigration violator, now that no longer exists. And, instead, there is a gradual stair-stepping upwards of levels, not just an immediate plus-16. But I guess the difficulty here is he was a busy guy. He was. In that he'd had seven prior removals, correct? That's correct. That's not insignificant in terms of prior conduct to take into account. I read the judge's statements as saying he thought that really underrepresented the history, and so while he went through the other factors, he was focused on deterrence. Could you comment on that?  I agree with your analysis, Judge. I believe that in this case the big focus has to be on the fact that the District of Arizona is in such a unique situation of having so many immigration cases, and many times our defendants have numerous priors. We're in a unique situation. You can't compare the District of Arizona defendant who has an immigration offense with a district of Vermont, Montana, or Alaska. We could certainly take virtually all the states bordering on the Mexican border in there in this situation. Certainly. Would that result in a different sentence if they were caught in Colorado than in Arizona? Absolutely. A few years ago, I had a... Is that the idea behind the sentencing guidelines, to get uniformity rather than geography? Well, yes, that's the theory, but that isn't how it really works. A few years ago, I had a reentry out of Montana, and the fellow had three priors, and they wanted to give him 96 months, and I about passed out. I understand. But here in the Court, I think we're supposed to try and accomplish what the Senate was trying or what the Congress was trying to do. And I don't see in your brief that you've indicated that the district judge committed any procedural error, that it's substantive error, that it's not reasonable. And one of the aspects of reasonableness is deterrence. And seven straight times of breaking a law and committing a felony indicates perhaps that he hasn't yet learned his lesson. And I was struck that when the sentencing, when the judge was going to give a sentencing, the defendant turned his back on the judge. Doesn't that indicate that he's just less than prepared to live the life he should and that the judge could take that into consideration in developing a reasonable sentence? I'm not going to defend Mr. Higuera-Lamas's impolite attitude in court. Clearly, that's a problem. However, I think the thing I want to focus on is the idea that when a judge says, well, this is an extraordinarily high number of priors, that this has to be fact-based, and it has to be fact-based in relation to the district you're in. Because even though theoretically we should have a uniform system of sentencing throughout the United States, theoretically it shouldn't matter if you're in Vermont with an illegal entry case or in Arizona, but we know in fact it does. But is there, you know, I think we have cases that say that you don't take that into effect, don't we? But we do, because even the Department of Justice has recognized the overwhelming number of immigration cases in the District of Arizona and has therefore authorized the fast-track system. Well, but did the court here, was that part of the argument in front of the judge that there was some statistical evidence that seven is small because most people have 20? No. In other words, how would we even substantively benchmark your argument? Well, that's the problem, Judge. I think that if you have a district court judge who has to make reference to some fact, he has to make reference to maybe a statistical compilation that DOJ has created, or maybe there's a learned law review article that has addressed immigration problems. But he has to make it based on some sort of fact. Otherwise, how can you ever review for reasonableness? Because otherwise you're just saying, well, I feel like three is a big number, and another judge will go, well, I think nine is a big number. And how do you get past it? Usually we get past it because the defense counsel comes in and he says, he or she says X, and then we take a look at what they say. I understand. Don't you think that's what usually happens? Yes. If seven isn't a large number in Arizona, you must have a lot of cases where you can say here we had eight and nothing happened. Here we had nine and nothing happened. Exactly. You haven't cited any of those cases to us, though, have you? No. That's true. That's true. Because that was not an argument that was presented at the lower court level. So it's not one that we can consider on appeal. Well, they did object and they did urge that the criminal history was adequately represented. And I think because of how case law has interpreted variances from guidelines that you could look at this and go there was no compelling justification expressed by Judge Tilburg to warrant him saying that this fellow's number of priors was exceptional or unusual or significant in order to merit a variance significantly upwards. I would like to reserve my last two minutes, please. You may. I have one other question for you. In your brief, you did not, as required by our rules, set up the issues you wish to bring before the court. And then you did, though, focus upon sentencing. I take it that sentencing is the only issue you are bringing before us? Well, I also did brief the issue of the judgment and commitment document that was introduced. And I feel that, pardon me, that that's adequately briefed in my opening brief. Yes. Well, usually if you don't cite it in your issues, we consider it waived. I'm sorry if I made that mistake. I won't do it again. Thank you. But I thought I had. I'm sorry. I will go ahead and reserve my last one minute then. All right. You may proceed. Thank you. Good morning, Your Honors. My name is Lynn Ingram, and I represent the United States. I will be limiting my oral argument based on the appellant's oral argument and not be addressing the issues unless the court has specific questions regarding the conviction that has been submitted to this Court as ordered this morning. The district court reasonably exercised its discretion when it determined the defendant's criminal history was underrepresented when it upward departed two levels. The district court specifically noted seven removals and deportations prior to the eighth one, which is what the defendant was at trial for. Only two of those resulted in convictions. The first was for an illegal entry on January 20th of 2004, and the second was the November 27th, 2006, deportation that resulted in conviction on December 20th of 2004. Those can be seen in the excerpts of Record 3, page 4, line 15. The district court, pursuant to the guidelines 4A1.3A23, specifically noted at sentencing that the reason he was doing it was for prior similar adult conduct, not resulting in a criminal conviction. So he noted in excerpts of Record 3, page 4, lines 12 through 14, that information, and he specifically indicated he recognized that two of those resulted in a conviction. The other ones did not. Third, the defendant turned his back on the court, as was mentioned earlier, in the appellant's argument during sentencing, and the court noted it and noted the defendant's contemptuous attitude towards the legal process. That is in excerpts of Record 3, line 4, excuse me, line 9, page 9, line 9 through 15, and noted that the defendant has made a border, our border, a revolving door that he can come and go at his whim, and based on his attitude and the seven prior removals and deportations, that the court found that was significant justification to upwardly depart two levels. And the extent of the deviation, Your Honors, it was two levels. It was only two levels. It was a matter of months that was increasing. The initial pre-sentence report and the criminal history category, four instead of six, was only a matter of months. If Your Honors have nothing further. I have some questions, if I could, please. We thank you for finding the sanitized version. I know sometimes all of the exhibits go back to the prosecution and they get lost at the office, but we appreciate that we can take a look at this. Now, the judge, when I take it when you presented this, the judge did a 403 balance analysis. Yes, Your Honor. The sign case says that the judge should consider less problematic ways of accomplishing this. And I don't see in the record where he did that. It's not specifically in the record where he did that, Your Honor, other than sanitizing  He redacted. But the point is, should this have ever gone into evidence, if there were ways of proving the same issue that did not carry with it the problematic difficulty here with this, which indicates that he's been convicted of a felony. Now, for example, I suppose there were some deposition orders around you could have used. The opposition lawyer indicates that the A file was available. And I wonder whether or not the judge considered those possible other ways of proving alienage without the more difficult judgment and convict the judgment order here. It is the United States position that the judge did, in fact, consider it, Your Honor, specifically because several of the alien file records were admitted into evidence. The objection was made by defense that it was cumulative and extremely prejudicial. However, based on 403 in case law, the conviction pursuant to USC 1326 establishes conclusively that the defendant was an alien at the time of conviction, and that's important. See, that's true always. I mean, in other words, those cases would be meaningless if we just accept your statement at face value. Of course, the conviction conclusively establishes it. But the cases say the conviction can be highly prejudicial. So look at alternatives. And I don't think you've quite gotten to the bottom of Judge Wallace's question. Here, in particular, you had some things you don't have in every case. You had an admission, I thought, as to alien age plus the A file. Why wouldn't – shouldn't that have been considered by the judge as a reasonable alternative to admitting the conviction? Yes, Your Honor. You did have admissions from the defendant, and those were admitted into evidence during the trial. But it corroborates the defendant's statements that were made at the time. And as far as his testimony making admissions of every element in this offense, the United States could not have anticipated that would have occurred. So when the Court addressed the 403 factors, it's the United States' position that he did consider the prejudicial effect and other alternatives, and he chose to sanitize it by taking out an entire page and almost two pages. The only thing in this entire document is the actual adjudication and the imposition of sentence. Did the defendant object to the use of this document? Yes, Your Honor. And the basis of the objection was what? That it was cumulative evidence and that it was overly prejudicial. Cumulative to what? Cumulative to the information and evidence that was submitted during the trial, the records from the alien file. The A-file? Yes, Your Honor. Was the A-file already in? The A-file as a whole was not admitted, but several documents from the A-file were admitted that indicated the defendant's admissions. And this was insufficient for what reason? It was insufficient because there was further evidence corroborating these statements of the defendant. Otherwise, we only have the defendant's admission. No, that doesn't really answer the question. I mean, you had him dead bang that he's an alien, his admission plus his A-file. Why do you need the conviction? We need the conviction because it's further documentation. Otherwise, we just don't. I think you're missing the point. I mean, if you need further documentation, then, as I say, you're not reading those cases of ours that say it's highly prejudicial to put in the conviction, particularly if you have alternatives. So you're saying, well, we have the alternatives, but we really want to basically put the last nail in the coffin, so we'll put the prejudicial document in, too. How do you square that position with our case law? Based on the case law that says that a limiting instruction is sufficient once that is put into evidence. Additionally, Your Honor, if you focus on the limiting instruction. Well, I understand that part of it, that you have to worry about getting it properly instructed. That's to save this document. But the question is, should the district judge have considered whether this document should be used at all? That's the issue. And I understand you're between a rock and a hard place. If you don't give enough, then we reverse you because that the person admits under an alien we say isn't enough. But on the other hand, we have the cases that doesn't answer the question. What it does is raise the question for the district judge. That is, did the district judge consider these other alternative when he does the 403, he or she does the 403 analysis? And in this case, did the district judge consider the other evidence is sufficient? In the United States, the response to that is, yes, it did consider that. It considered that because of the information that it had before it that was being admitted into evidence when the objection was made by defense counsel. Okay. So the judge then made this consideration, and that's in the record, right? Yes, Your Honor. Specific reference to 403 and the objection. And that puts us into a different level of whether he abused his discretion in making that determination, which is a little easier task for you on the side of the government. It is, Your Honor. And we would submit that based on the limiting instruction that there was no abusive discretion, and if there was any error, it was harmless. For the reasons set forth in the brief, I request that the judgment and conviction in the sentence in this case be affirmed. Thank you. Thank you. We have some time for rebuttal. Just briefly, to turn to the admission of Exhibit 6A of the J&C, in this particular matter, it's interesting to note that perhaps if the government had wanted to prove with yet other documents that my client was, in fact, the alien that he admitted to be after two confessions and after the APAL was admitted, the government could have turned to a document that would be more neutral on its face, such as perhaps a divorce decree or a baptismal certificate or something where the fellow is not being convicted of an offense. There are other documents out there in the big world available to the government. Were they offered up by the defense as alternatives? Oh, no, no. No, no. He always admitted that he was an illegal alien. I mean, that was never in dispute in this matter. And so we ask that you would give this case careful consideration, and please find that in this particular matter that the criminal history was adequately represented by the computation today by the probation people, and that Judge Gilborg erred in varying upwards. Thank you. Thank you. We will give it careful consideration. I can't say whether it will come out your way or not. That will be determined. The case of United States v. Higueri and Llamas is submitted. Thank both counsel for your argument this morning.
judges: Wallace, Farris, McKeown